## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RFR HOLDING LLC and<br>CENTURY 21 CHICAGO, LLC<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>PONTE GADEA FLORIDA, INC. and<br>CHICAGO MICHIGAN, LLC,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | FILED<br>MARCH 17, 2008   JH<br>08 CV 1555<br>JUDGE ANDERSEN<br>MAGISTRATE JUDGE COLE<br><br>No. _____<br><br>**Jury Trial Demanded on Count II** |

## **COMPLAINT**

RFR Holding LLC ("RFR") and Century 21 Chicago, LLC ("Century 21 Chicago") (collectively, "Plaintiffs"), by their undersigned attorneys, state as follows for their Complaint against Ponte Gadea Florida, Inc. ("PGF") and Chicago Michigan, LLC ("CM") (collectively, "Defendants"):

1.　　Plaintiffs bring this action to recover the damages that Defendants owe them as a result of Defendants' breach of a confidentiality agreement with Plaintiffs and subsequent tortious interference in Plaintiffs' attempt to purchase a valuable commercial property. Specifically, Defendants took the confidential information provided by Plaintiffs and used that information to interfere with Plaintiffs' proposed acquisition of the property. In other words, Defendants breached the confidentiality agreement, went behind Plaintiffs' back, and stole the opportunity from Plaintiffs. As a direct result of Defendants' actions, Plaintiffs suffered in excess of twenty-five million dollars ($25,000,000) in actual damages.

**Parties, Jurisdiction, and Venue**

2. Plaintiff RFR is a New York limited liability company, all the members of which are citizens of the State of New York.

3. RFR is a major real estate owner, developer and property manager and is an affiliate of one of the two members of Century 21 Chicago.

4. Plaintiff Century 21 Chicago is a Delaware limited liability company, all the members of which are citizens of the State of New York.

5. The members of Century 21 Chicago consist of an affiliate of the Century 21 organization, a chain of department stores, and an affiliate of RFR.

6. Upon information and belief, defendant PGF is a Florida corporation having its principal place of business in the State of Florida.

7. Upon information and belief, defendant CM is a Delaware limited liability company, all the members of which are citizens of the States of Florida or Illinois.

8. Upon information and belief, defendant CM is an affiliate of PGF.

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

**The Confidentiality Agreement**

11. By contract of sale dated October 12, 2007, Century 21 Chicago contracted with 730 North Michigan Avenue, L.L.C. ("Seller"), to purchase Seller's fee interest and other interests in the land commonly known as 730 North Michigan Avenue (collectively referred to as the "Property") for a purchase price of $350,000,000.

12. At the same time, Century 21 Chicago and its affiliate, RFR, began to explore the possibility of bringing in other investors or third party sources of financing for the Property or, alternatively, to locate tenants or other parties who would be interested in acquiring an interest in the Property.

13. In furtherance of such efforts, RFR entered into a confidentiality agreement (the "Confidentiality Agreement") with PGF, its principals, and affiliates.

14. RFR and PGF executed the Confidentiality Agreement on November 9, 2007.

15. The purpose of the Confidentiality Agreement was to allow Plaintiffs to disclose information about the Property to PGF and its affiliates while ensuring that PGF and its affiliates would not thereafter deal directly with Seller with respect to the Property or otherwise use the information to the detriment of Plaintiffs.

16. Pursuant to the express terms of the Confidentiality Agreement, RFR and its affiliates agreed to provide PGF and its affiliates with certain information relating to the Property.

17. PGF and its affiliates agreed to keep such information "strictly confidential."

18. PGF and its affiliates further agreed to use such information only for purposes of a proposed transaction with RFR and its affiliates and not to "provide, communicate or disclose to any third party" the information without prior written consent of RFR.

19. PGF and its affiliates further agreed not to "discuss the Property with . . . the current fee owner or ground lessee or their affiliates (collectively, the 'Owners') of the Property."

20.     In other words, Defendants acknowledged that as a quid pro quo for being furnished by Plaintiffs with information about the Property, Defendants would not under any circumstances have discussions about the Property with Seller.

### **Defendants' Breach and Intentional Interference**

21.     At the time Century 21 Chicago entered into the contract with Seller, Seller was in the process of negotiating a new lease with Victoria's Secret that did not contain a percentage rent provision.

22.     During the due diligence period provided for in the Contract, Century 21 Chicago concluded that the absence of such a percentage rent provision was inconsistent with market conditions.

23.     As a result, before the end of the due diligence period provided for in the contract with Seller, in order to preserve its rights, Century 21 Chicago sent Seller a notice on November 20, 2007 terminating the contract.

24.     Notwithstanding this notice, Century 21 Chicago's discussions with Seller continued unabated after November 20, 2007.

25.     Similarly, Plaintiffs' discussions with PGF and its representatives pursuant to the Confidentiality Agreement also continued uninterrupted after November 20, 2007.

26.     On November 28, 2007, Seller advised Century 21 Chicago that it had succeeded in negotiating a percentage rent provision in the lease to be signed with Victoria's Secret, and Seller sought Century 21 Chicago's approval of the Victoria's Secret lease with such added provision.

27. In response, Century 21 Chicago approved the revised lease, and Century 21 Chicago and Seller confirmed to one another that they were each confident the sale of the Property to Century 21 Chicago could now be finalized.

28. On November 28, 2007, Plaintiffs' representative arranged for and accompanied PGF on an inspection and walk through of the Property.

29. That same day, PGF confirmed that it was prepared to pay at least $360 million to Century 21 Chicago to purchase the Property from it.

30. However, on or about December 5, 2007, Century 21 Chicago was abruptly notified that Seller was terminating discussions with Century 21 Chicago with respect to the sale of the Property.

31. Upon information and belief, between November 28, 2007 and December 5, 2007, in breach of its obligations under the Confidentiality Agreement and in a purposeful attempt to interfere with Century 21 Chicago's prospective economic advantage and contractual relationship, PGF and its affiliate CM discussed the Property with Seller.

32. As a direct result thereof, within a month thereafter, CM purchased the Property from Seller for a purchase price of $350,000,000 -- $10,000,000 less than PGF had indicated it was prepared to pay to Century 21 Chicago -- and has owned the Property continuously since that time.

## Count I

33. Plaintiffs repeat and reallege each of the allegations in paragraphs 1 through 32 of the Complaint with the same force and effect as if fully set forth herein.

34. In the Confidentiality Agreement, Plaintiffs agreed to provide Defendants with certain information regarding the Property, and Defendants agreed not to "discuss the Property

with . . . the current fee owner or ground lessee or their affiliates (collectively, the 'Owners') of the Property."

35. In express violation of the Confidentiality Agreement, Defendants engaged in discussions concerning the Property with Seller.

36. In fact, Defendants intentionally sought to purchase, and in fact did purchase, the Property directly from Seller.

37. Such actions on the part of Defendants constituted a breach of their obligations under the Confidentiality Agreement.

38. But for Defendants' wrongful actions, Plaintiffs would have purchased the Property from Seller.

39. By reason of Defendants' breach of the Confidentiality Agreement, as aforesaid, Defendants are liable to Plaintiffs for the actual damages sustained by Plaintiffs in excess of twenty-five million dollars ($25,000,000), the precise amount of which will be proven at trial.

## Count II

40. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 32 of the complaint with the same force and effect as if fully set forth herein.

41. Plaintiffs had a reasonable expectancy of contracting to purchase the Property from Seller.

42. Defendants knew that Plaintiffs intended to purchase the Property from Seller.

43. Defendants intentionally interfered with the prospective contractual relationship between Plaintiffs and Seller, and thus interfered with Plaintiffs' prospective economic advantage.

44. Defendants' interference was done in a wrongful manner and was in deliberate disregard of the confidential relationship which existed with Plaintiffs, which specifically precluded Defendants from entering into discussions with Seller respecting Defendants' purchase of Property.

45. By reason of Defendants' intentional interference, Plaintiffs suffered damages in excess of twenty-five million dollars ($25,000,000), the precise amount of which will be proven at trial.

46. In addition, Plaintiffs seek and are entitled to recover punitive damages against Defendants by reason of their wrongful actions.

47. Plaintiffs demand a jury trial on Count II.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1. On the first cause of action, awarding against Defendants, jointly and severally, the actual damages sustained by Plaintiffs in the amount of at least twenty-five million dollars ($25,000,000), the precise amount of which will be proven at trial, together with interest thereon;

2. On the second cause of action, awarding against Defendants, jointly and severally, the actual damages sustained by Plaintiffs in the amount of at least twenty-five million dollars ($25,000,000), the precise amount of which will be proven at trial, together with interest thereon, and punitive damages in an amount to be determined; and

3. For such other relief as the Court deems appropriate, together with the costs and disbursements of this action.

Respectfully submitted,

                              RFR HOLDINGS LLC
                              CENTURY 21 CHICAGO LLC


By:    /s/  Jocelyn D. Francoeur
       One of their Attorneys


Mark Walfish* (Application for *pro hac vice* admission pending)
KATSKY KORINS LLP
605 Third Avenue
New York, New York 10158-0038
(212) 953-6000

Lazar P. Raynal
Jocelyn D. Francoeur
McDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, Illinois 60606
Telephone: (312) 372-2000

CHI99 4947750-1.052498.0085