**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RFR HOLDING LLC and ) <br> CENTURY 21 CHICAGO, LLC ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> PONTE GADEA FLORIDA, INC. and ) <br> CHICAGO MICHIGAN, LLC, ) <br> ) <br> Defendants. ) | No. 08 CV 1555 <br><br> Judge Wayne R. Andersen <br><br> Magistrate Judge Jeffrey Cole <br><br> **Jury Trial Demanded on Counts II & III** |

**AMENDED COMPLAINT**

RFR Holding LLC ("RFR") and Century 21 Chicago, LLC ("Century 21 Chicago") (collectively, "Plaintiffs"), by their undersigned attorneys, state as follows for their Amended Complaint against Ponte Gadea Florida, Inc. ("PGF") and Chicago Michigan, LLC ("CM") (collectively, "Defendants"):

1.      Plaintiffs bring this action to recover the damages that Defendants owe them as a result of Defendants' breach of a written confidentiality and no-solicitation agreement with Plaintiffs and subsequent tortious interference in Plaintiffs' attempt to purchase a valuable commercial property.  In the alternative to their claim for breach of contract, Plaintiffs also assert a claim for unjust enrichment.  Specifically, Defendants took the confidential information provided by Plaintiffs and used that information to interfere with Plaintiffs' proposed acquisition of the property.  In other words, Defendants breached their express agreement with Plaintiffs, misused confidential information, went behind Plaintiffs' back, and stole the business opportunity from Plaintiffs.  As a direct result of Defendants' actions, Plaintiffs suffered in excess of twenty-five million dollars ($25,000,000) in actual damages.

**Parties, Jurisdiction, and Venue**

2. Plaintiff RFR is a New York limited liability company, all the members of which are citizens of the State of New York.

3. RFR is a major real estate owner, developer and property manager and is an affiliate of one of the two members of Century 21 Chicago.

4. Plaintiff Century 21 Chicago is a Delaware limited liability company, all the members of which are citizens of the State of New York.

5. The members of Century 21 Chicago consist of an affiliate of the Century 21 organization, a chain of department stores, and an affiliate of RFR.

6. Upon information and belief, defendant PGF is a Florida corporation having its principal place of business in the State of Florida.

7. Upon information and belief, defendant CM is a Delaware limited liability company, all the members of which are citizens of the States of Florida or Illinois.

8. Upon information and belief, defendant CM is an affiliate of PGF.

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

**The Written Agreement**

11. By contract of sale dated October 12, 2007 (the "Contract of Sale"), Century 21 Chicago contracted with 730 North Michigan Avenue, L.L.C. ("Seller"), to purchase Seller's fee interest and other interests in the land commonly known as 730 North Michigan Avenue (collectively referred to as the "Property") for a purchase price of $350,000,000. Significantly,

the Seller did not publicly market the Property or otherwise make its interest in selling the Property widely known.  The Seller had approached an affiliate of Century 21 Chicago privately about the possibility of selling the Property to one of the Century 21 entities or their affiliates and, on information and belief, the Seller did not engage at that time in negotiations with any other person about the possible sale of the Property.  But for Plaintiffs' dealings with Defendants, as described below, Defendants would not even have known of the availability of the Property for sale.

12. At the same time that it entered into the Contract of Sale, Century 21 Chicago and its affiliate, RFR, began to explore the possibility of bringing in other investors or third party sources of financing for the Property or, alternatively, to locate tenants or other parties who would be interested in acquiring an interest in the Property.

13. In furtherance of such efforts, RFR entered into a written agreement (the "Agreement") with PGF, its principals, and affiliates.

14. RFR and PGF executed the Agreement on November 9, 2007.

15. The purpose of the Agreement was to allow Plaintiffs to disclose information about the Property to PGF and its affiliates and to explore the possibility of a transaction relating to the Property with them, while ensuring that PGF and its affiliates would not thereafter deal directly with Seller with respect to the Property or otherwise act to the detriment of Plaintiffs.

16. Pursuant to the express terms of the Agreement, RFR and its affiliates agreed to provide PGF and its affiliates with certain information relating to the Property.

17. PGF and its affiliates agreed to keep such information "strictly confidential."

18. PGF and its affiliates further agreed to use such information only for purposes of a proposed transaction with RFR and its affiliates and not to "provide, communicate or disclose to any third party" the information without prior written consent of RFR.

19. PGF and its affiliates further agreed not to "discuss the Property with . . . the current fee owner or ground lessee or their affiliates (collectively, the 'Owners') of the Property."

20. In other words, Defendants acknowledged that as a quid pro quo for being furnished by Plaintiffs with information about the Property, Defendants would not under any circumstances have discussions about the Property with Seller.

## Defendants' Wrongful Actions

21. At the time Century 21 Chicago entered into the Contract of Sale with Seller, Seller was in the process of negotiating a new lease with Victoria's Secret that did not contain a percentage rent provision.

22. During the due diligence period provided for in the Contract, Century 21 Chicago concluded that the absence of such a percentage rent provision was inconsistent with market conditions.

23. As a result, before the end of the due diligence period provided for in the Contract of Sale with Seller, in order to preserve its rights, Century 21 Chicago sent Seller a notice on November 20, 2007 terminating the contract. Although the November 20, 2007 notice preserved the rights of Century 21 Chicago not to be bound by a lease with Victoria's Secret that lacked a percentage rent provision, the Seller and Century 21 Chicago continued without interruption their efforts (a) to obtain a new lease with Victoria's Secret that contained an appropriate percentage rent provision; and (b) to enter into a new agreement for Century 21 Chicago to

acquire the Property from Seller. The November 20 notice did not affect either the Seller's interest in selling the Property to Century 21 Chicago or Century 21 Chicago's interest in purchasing the Property. Both parties continued to work unabated and uninterrupted toward consummating that transaction.

24. Similarly, Plaintiffs' discussions with PGF and its representatives pursuant to the Agreement, and the parties' performance and obligations under the Agreement, also continued uninterrupted after November 20, 2007.

25. On November 28, 2007, Seller advised Century 21 Chicago that it had succeeded in negotiating a percentage rent provision in the lease to be signed with Victoria's Secret, and Seller sought Century 21 Chicago's approval of the Victoria's Secret lease with such added provision.

26. In response, Century 21 Chicago approved the revised lease, and Century 21 Chicago and Seller confirmed to one another that they were each confident the sale of the Property to Century 21 Chicago could now be finalized.

27. On November 28, 2007, Plaintiffs' representative arranged for and accompanied PGF on an inspection and walk through of the Property.

28. That same day, PGF confirmed that it was prepared to pay at least $360 million to Century 21 Chicago to purchase the Property from it.

29. However, on or about December 5, 2007, Century 21 Chicago was abruptly notified that Seller was terminating discussions with Century 21 Chicago with respect to the sale of the Property.

30.     Upon information and belief, between November 28, 2007 and December 5, 2007, in breach of its obligations under the Agreement, PGF and its affiliate CM discussed the Property with Seller.

31.     Neither Defendants nor the Seller informed Plaintiffs of Defendants' negotiations with the Seller, which were undertaken behind Plaintiffs' back and in violation of Defendants' obligations under the Agreement.  Although the Seller had stated its intention to sell the Property to Century 21 Chicago (now that the Victoria's Secret lease issue had been resolved), the breach of the Agreement caused the Seller not to consummate that stated intention.  Plaintiffs did not learn of the breaches by Defendants until after Defendants closed their purchase of the Property from the Seller.

32.     As a direct result of Defendants' breaches, within a month thereafter, CM purchased the Property from Seller for a purchase price of $350,000,000 -- $10,000,000 less than PGF had indicated it was prepared to pay to Century 21 Chicago -- and has owned the Property continuously since that time.

### Count I

33.     Plaintiffs repeat and reallege each of the allegations in paragraphs 1 through 32 of the amended complaint with the same force and effect as if fully set forth herein.

34.     In the Agreement, Plaintiffs agreed to provide Defendants with certain information regarding the Property, and Defendants agreed not to "discuss the Property with . . . the current fee owner or ground lessee or their affiliates (collectively, the 'Owners') of the Property."

35.     In express violation of the Agreement, Defendants engaged in discussions concerning the Property with Seller.

36. In fact, Defendants intentionally sought to purchase, and in fact did purchase, the Property directly from Seller.

37. Such actions on the part of Defendants constituted a breach of their obligations under the Agreement.

38. But for Defendants' wrongful actions, Plaintiffs would have purchased the Property from Seller.

39. By reason of Defendants' breach of the Agreement, as aforesaid, Defendants are liable to Plaintiffs for the actual damages sustained by Plaintiffs in excess of twenty-five million dollars ($25,000,000), the precise amount of which will be proven at trial.

## Count II

40. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 12, 21 through 23, and 25 through 29 of the amended complaint with the same force and effect as if fully set forth herein.

41. Commencing on or about November 12, 2007, Plaintiffs provided Defendants with confidential and proprietary information, including Plaintiffs' own internal projections and analyses relating to the Property. Based on the nature of the information, the circumstances under which it was conveyed to Defendants and the parties' overall dealings with each other, Plaintiffs provided Defendants with such confidential and proprietary information with the reasonable expectation that such information would be kept confidential, not misappropriated and not misused by Defendants including, without limitation, using such confidential and proprietary information of Plaintiffs' to steal the Property away from Plaintiffs. Defendants knew of those reasonable expectations by Plaintiffs and accepted Plaintiffs' confidential and proprietary information based on those understandings. The circumstances here imposed a duty

on Defendants not to misappropriate or misuse Plaintiffs' confidential and proprietary information.

42.    After November 20, 2007, Plaintiffs' discussions with PGF and its representatives continued uninterrupted.

43.    Upon information and belief, between November 28, 2007 and December 5, 2007, in a purposeful attempt to interfere with Century 21 Chicago's prospective economic advantage and contractual relationship, PGF and its affiliate CM discussed the Property with Seller.

44.    Neither Defendants nor the Seller informed Plaintiffs of Defendants' negotiations with the Seller, which were undertaken behind Plaintiffs' back.  Although the Seller had stated its intention to sell the Property to Century 21 Chicago (now that the Victoria's Secret lease issue had been resolved), the interference by Defendants caused the Seller not to consummate that stated intention.  Plaintiffs did not learn of the interference by Defendants until after Defendants closed their purchase of the Property from the Seller.

45.    As a direct result of Defendants' interference, within a month thereafter, CM purchased the Property from Seller for a purchase price of $350,000,000 -- $10,000,000 less than PGF had indicated it was prepared to pay to Century 21 Chicago -- and has owned the Property continuously since that time.

46.    Plaintiffs had a reasonable expectancy of contracting to purchase the Property from Seller.

47.    Defendants knew that Plaintiffs intended to purchase the Property from Seller.

48. Defendants intentionally interfered with the prospective contractual relationship between Plaintiffs and Seller, and thus interfered with Plaintiffs' prospective economic advantage.

49. On information and belief, Defendants misappropriated Plaintiffs' confidential and proprietary information and misused that information in connection with Defendants' efforts to purchase the Property.

50. Defendants deceived Plaintiffs and procured Plaintiffs' confidential and proprietary information under false pretenses by not disclosing that Defendants intended to seek to purchase the Property for themselves and that Defendants would use Plaintiffs' confidential and proprietary information for Defendants' own purposes and advantages, which were adverse to the interests of Plaintiffs, rather than using such information, as Defendants represented they would do, solely to evaluate a joint, mutually beneficial business transaction (e.g., financing, leasing or resale of the Property) between Plaintiffs and Defendants.

51. Defendants' interference was done in a wrongful manner, utilizing wrongful means (including misuse and misappropriation of Plaintiffs' proprietary and confidential information), and was in deliberate disregard of the confidential relationship which existed with Plaintiffs.

52. By reason of Defendants' intentional interference, Plaintiffs suffered damages in excess of twenty-five million dollars ($25,000,000), the precise amount of which will be proven at trial.

53. In addition, Plaintiffs seek and are entitled to recover punitive damages against Defendants by reason of their wrongful actions.

**Count III**

54.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 12, 21 through 23, 25 through 29, and 41 through 51 of the amended complaint with the same force and effect as if fully set forth herein.

55.     This Count III for unjust enrichment is pleaded in the alternative to Count I. While Plaintiffs believe that there was a valid and enforceable contract between the parties, Defendants have contended in this action that such a contract was not valid and/or enforceable. In the event that the alleged contract between the parties should be determined not to be valid and/or enforceable, then Defendants have been unjustly enriched at the expense of the Plaintiffs and Defendants should make restitution to Plaintiffs.

56.     Defendants have benefited from Plaintiffs' efforts, including, among other things, (a) Plaintiffs' negotiation of various issues relating to a contract of sale with the Seller that Defendants took advantage of for their own purchase of the Property; (b) Plaintiffs' succeeding in persuading the Seller to obtain a new lease with Victoria's Secret that contained a favorable percentage rent provision; and (c) Plaintiffs' proprietary and confidential analyses and projections and other information concerning the Property.  Among other things, Defendants were able to purchase the Property for a purchase price of $350,000,000 -- at least $10,000,000 less than they had offered to pay to Century 21 Chicago for a resale of the Property by Century 21 Chicago to Defendants.

57.     To the extent that Defendants believed that the Agreement was void <u>ab initio</u>, as they now contend, then Defendants deceived Plaintiffs and obtained Plaintiffs' confidential and proprietary information under false pretenses.

58. Defendants' unjust enrichment came at the expense of Plaintiffs, who, among other things, expended considerable time, money and effort pursuing the purchase of the Property and who were deprived of the opportunity, at a minimum, of reselling the Property to Defendants for at least $10,000,000 more than they could have purchased it from the Seller.

59. Permitting Defendants to profit at the expense of Plaintiffs, under the facts and circumstances here, would be unjust, and equity and good conscience require that Defendants be compelled to make restitution to Plaintiffs in an amount to be determined at trial.

### Jury Trial Demand

60. Plaintiffs demand a jury trial on Counts II and III.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A. On the first cause of action, awarding against Defendants, jointly and severally, the actual damages sustained by Plaintiffs in the amount of at least twenty-five million dollars ($25,000,000), the precise amount of which will be proven at trial, together with interest thereon;

B. On the second cause of action, awarding against Defendants, jointly and severally, the actual damages sustained by Plaintiffs in the amount of at least twenty-five million dollars ($25,000,000), the precise amount of which will be proven at trial, together with interest thereon, and punitive damages in an amount to be determined;

C. On the third cause of action, in the alternative to the first cause of action, awarding against Defendants, jointly and severally, restitution to Plaintiffs of at least $10,000,000, the precise amount of which will be proven at trial, together with interest thereon; and

D. For such other relief as the Court deems appropriate, together with the costs and disbursements of this action.

Dated: June 19, 2008

    Respectfully submitted,

                              RFR HOLDING LLC
                              CENTURY 21 CHICAGO LLC

                       By:   /s/ Mark Walfish
                               One of their Attorneys

Mark Walfish (Admitted *pro hac vice*)
KATSKY KORINS LLP
605 Third Avenue
New York, New York 10158-0038
(212) 953-6000

Lazar P. Raynal
Jocelyn D. Francoeur
McDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, Illinois 60606
Telephone: (312) 372-2000

## CERTIFICATE OF SERVICE

I, Mark Walfish, an attorney, certify that on June 19, 2008, I caused a true and complete copy of plaintiffs' **Amended Complaint** to be served via CM/ECF mail upon:

Howard Kevin Jeruchimowitz
Rita M. Alliss Powers
Thomas E. Dutton
Greenberg Traurig, L.L.P.
77 West Wacker Drive
Suite 2500
Chicago, IL  60601

And via first-class mail upon:

Hilarie Bass
Greenberg Traurig LLP
1221 Brickell Avenue
Miamia, FL  33131

                                                       /s/ Mark Walfish