**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RFR HOLDING LLC and ) <br> CENTURY 21 CHICAGO, LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> PONTE GADEA FLORIDA, INC. and ) <br> CHICAGO MICHIGAN, LLC, ) <br> ) <br> Defendants. ) | No. 08 CV 1555 <br><br> Judge Andersen <br><br> Magistrate Judge Cole |

**MEMORANDUM OF LAW IN RESPONSE TO
PLAINTIFFS' MOTION TO DISQUALIFY**

Defendants Ponte Gadea Florida, Inc. ("Ponte Gadea") and Chicago Michigan, LLC (collectively "Defendants") submit this memorandum, together with the accompanying affidavits of Israel L. Alfonso, Jerrold F. Goldberg, Cheryl B. Edlin, and Alejandro Rodriguez, in response to Plaintiffs Motion to Disqualify Greenberg Traurig, LLP ("GT") from representing Defendants in this action.

**PRELIMINARY STATEMENT**

Plaintiffs seek to disqualify GT and prevent the Defendants from using their chosen counsel in this case. They seek to prevent the Defendants from using the same law firm to defend this litigation that not only advised Defendants during the failed negotiations that caused Plaintiffs to file this lawsuit, but whom Plaintiffs initially contacted, knowing that it represented Defendants, to determine if Defendants had an interest in purchasing 730 N. Michigan (the "Property") from Plaintiffs. Plaintiffs' tactics are obvious. They want to proceed in this litigation with their deal counsel, Katsky Korins LLP, but prevent Ponte Gadea from doing the same.

Plaintiffs essentially make two arguments. *First*, recognizing that the ethical rules in Illinois and elsewhere generally permit law firms to be adverse to a current client's *affiliate*, Plaintiffs' pin their hopes of disqualifying GT on the incorrect assertion that one of the two plaintiff-entities, RFR Holding, LLC ("RFR Holding") is a current GT client. As shown below, this assertion is wrong. In fact, neither of Plaintiffs in this lawsuit are current GT clients.

*Second*, left with no other option, Plaintiffs argue GT should be disqualified because of its ongoing representation of Plaintiffs' affiliates in connection with four separate, unrelated projects. In this regard, Plaintiffs are trying to have it both ways. Plaintiffs want all of the legal protections and economic advantages that accrue from developing real estate through complex structures of legally separate and distinct "single purpose" entities, while treating them all as one entity when it suits them. Nevertheless, as is generally the case, GT's representation of Plaintiffs' affiliates does not present a conflict of interest warranting disqualification.

## STATEMENT OF FACTS

RFR Holding and Century 21 Chicago, LLC ("Century 21 Chicago") filed their initial complaint on March 17, 2008. Defendants were served on March 20, 2008. The lawsuit alleged claims for breach of contract and for tortious interference with economic advantage resulting from Defendants' successful purchase of the Property. Because GT had represented Defendants throughout the negotiations that led to their successful purchase of the Property and because GT handles all of Ponte Gadea's legal matters in the United States, Ponte Gadea chose GT to represent it in the litigation.

On April 11, 2008, after GT appeared on Defendants' behalf, Plaintiffs' New York counsel, Mr. Walfish, demanded that GT withdraw from its representation of Defendants. Mr. Walfish premised his demand on the incorrect assertion that "GT, LLP is currently representing

both RFR Holding LLC and an affiliate of Century 21 in numerous matters throughout the country." Mr. Walfish identified five matters to support his assertion: (1) The W. Southbeach Project; (2) The Miami Herald Project; (3) Emerald Dunes Golf Course; (4) New York City Labor Issues; and (5) 87th Street Bayridge Brooklyn Project.

Upon receipt of the April 11, 2008 letter, GT investigated its allegations and assertions. The facts conclusively show that RFR Holding is <u>not</u> a current GT client.

### I.     Greenberg Traurig's Business Intake System

The relevant facts regarding GT's business intake system, which records all client, matter, conflict and billing information for the projects set forth above, are laid out in the accompanying affidavit of Cheryl B. Edlin, sworn to August 1, 2008.

### II.    Neither RFR Holding LLC Nor Century 21 Chicago, LLC Is A Current Greenberg Traurig Client

The facts from GT's Business Intake system, together with other information relating to each of the projects identified above, demonstrate that RFR Holding is not a current GT client.

#### A.     The W South Beach Hotel & Residences

The W South Beach Hotel & Residences project is a combination W Hotel and condominium project on historic Collins Avenue in Miami Beach. Already underway, the project is expected to open in 2009. Beginning in April 2004, GT has opened 5 client-matters to capture time and expenses in connection with legal services performed on aspects of that project. RFR Holding is not GT's client with respect to any of these client-matters.

GT has opened two matters for a client identified as "David Edelstein" ("Edelstein"). First, on April 5, 2004, Lucia Dougherty, a Shareholder in GT's Miami office, opened a client-matter to represent Edelstein in proceedings before the Miami Beach Historic Preservation Board. Second, on December 19, 2007, Alfredo Gonzalez, a GT Shareholder in the Miami

3

Environmental Department, opened a new matter for Edelstein to capture time for legal services for obtaining a beachwalk permit for the W Hotel.

In addition, Gary Saul, a GT Shareholder in Miami's Real Estate Department, has opened three matters for a client identified as "2201 Collins Fee LLC." He opened the first, entitled "South Beach Condominium Hotel Documents," as the "Main file for South Beach Condominium Hotel." In an attachment to the "Client/Matter Intake Memorandum," Saul listed the "relevant related parties" as "2201 Collins Fee LLC, Jackie Mansfield, South Beach Condominium Hotel, and David Edelstein." Each of these related parties was described in the memo as "Client."

On January 30, 2006, Saul opened a second matter for "2201 Collins Avenue Condo Sales and Contract Matters." The New Business Intake Form listed "all adverse, related, and affected parties in the matter" as "2201 Collins Avenue Condominium." This entity is a "Client Affiliate," in connection with the "Project." Finally, a third matter for 2201 Collins Fee LLC was opened for legal services performed in connection with the sale of a condominium unit from Mr. Bradford L. Kuish and Mr. Eugene Kuish to an entity which is an affiliate of the client.

Initially, GT's billing department sent invoices for the 2201 Collins Fee matters to "830 Lincoln Road, Miami Beach, FL 33139" -- the same address to which the Edelstein matters invoices were sent. For the second and third 2201 Collins Fee matters, the New Business Intake Forms directed that invoices be sent to an address different from the client's address, listing the billing contact as Shahar Perry at "RFR Holding, 390 Park Avenue, 3rd Floor, New York, NY." Importantly, even though invoices were sent to RFR Holding, all of the invoices were paid by GT's client, 2201 Collins Fee LLC or its affiliate 2201 Collins Avenue LLC. None of the invoices were paid by RFR Holding. (Affidavit of Alejandro Rodriguez, ¶ 8)

4

**RFR Holding's Role in the W South Beach Project**:   Real estate developers often use "single purpose" entities to organize their real estate ventures.  Exhibit A, an organizational chart for 2201 Collins Fee LLC presented to the Miami Beach Historic Preservation Board, shows that the entity "RFR Holding LLC" does not appear anywhere in the corporate structure of 2201 Collins Fee LLC.  Instead, it appears that Aby Rosen and Michael Fuchs, the principals of RFR Holding, formed and each owned 50% of an entity entitled "R&F 2201 Collins LLC."  R&F 2201 Collins LLC in turn owns 60 % of "2201 Collins Avenue LLC."  (The remaining 40% is owned by Collinstar Capital LLC which, in turn, is owned by Jackie Mansfield, David Edelstein, and Robert Futterman).  Next, 2201 Collins Avenue LLC owns a 15% interest in "2201 Collins Intermediate LLC," the remaining 85% of which is owned by "Beach Tower Equity, LLC."  Finally, 2201 Collins Intermediate LLC owns 100% of GT's "Client," 2201 Collins Fee LLC.

In short, RFR Holding is not GT's "client" in connection with any of the matters relating to the South Beach Project.  RFR Holding is not identified as GT's client by any of the GT attorneys who have performed legal services in connection with the Project, and RFR Holding, does not have an interest in GT's client 2201 Collins Fee LLC.  At best, RFR Holding is an affiliate of a current GT client in connection with the South Beach Project.

B.    **The Miami Herald Property**

The "Miami Herald Property" project is a large commercial real estate project under development proposed for the former headquarters of the Miami Herald.   Since January 2005, GT has opened three client-matters in connection with this project.  None mention RFR Holding either as a client or as a client affiliate.

On January 5, 2005, Pedro A. Martin ("Martin"), an "Of Counsel" real estate attorney in GT's Miami office, opened the first of the matters for the client identified as "Company X[1]." The initial matter was for legal services pertaining to "Company X-Corporate Matters." Martin opened the second matter for Company X on January 7, 2005 for legal services in connection with purchasing real estate from Company A. Martin opened the third matter for legal services performed in connection with a Joint Venture between the client and Individual A. For all three matters, GT sent the legal bills to Martin's attention at Company X's address in Miami, FL. Company X has paid all of the invoices. (Affidavit of Alejandro Rodriguez, ¶ 9)

**RFR Holding's Role in the Miami Herald Project**: As in the case of the W Hotel Project, the specific entity that is the plaintiff in this case, RFR Holding LLC, is absent from the organization of corporate entities that have an interest in Company X. Instead, the organization chart for the project shows that another single purpose entity, "Company Y" and Martin's company "Company Z" are each the 50% owners and co-managing members of "Company W." "Company W" is, in turn, the 100% owner and managing member of "Company V" and Company V is the 85% owner and managing member of "Company U." Finally, "Company U" is the managing member and 100% owner of "Company X," which is GT's client.[2]

Once again, RFR Holding LLC is not identified as GT's "client" in connection with any of the matters relating to the Miami Herald project by the attorney who opened the client-matters in connection with the project. Further, the Plaintiff entity in this case, RFR Holding LLC, does not have an interest in GT's client, "Company X."

---

[1] Throughout this Response, in order to protect the confidentiality of clients, certain clients' names have been redacted. None of the redacted clients are RFR Holding or Century 21 Chicago. If the Court desires, identity of the clients can be made in camera.

[2] The Organizational Chart is being withheld to protect the confidentiality of GT's clients. If the Court desires, GT would be willing to submit this chart in camera.

6

### C. The Emerald Dunes Golf Course Project.

In his April 11 letter, Mr. Walfish also asserted that GT was "currently actively representing … RFR" in connection with a matter described as "Emerald Dunes Golf Course." In response, GT informed Mr. Walfish (as it did with the W South Beach Project and the Miami Herald Project) that "GT does not now and had never represented RFR Holding in connection with any aspect of the project known as the Emerald Dunes Golf Course." Mr. Walfish never responded, and it is assumed that RFR Holding no longer contends that it was GT's client in connection with this project.

### D. Labor Matters for RFR Realty LLC

The facts surrounding GT's representation of RFR Realty LLC are set forth in the accompanying affidavit of Jerrold F. Goldberg, sworn to August 1, 2008.

### E. Zoning Matters for Century 21 Department Stores LLC

Between 2004 and 2005, Jay Segal ("Segal"), a Shareholder in GT's New York office, opened eights matters to provide zoning advice for the client "Century 21 Department Stores LLC." Century 21 Chicago, LLC is not a client for any of them. At the time the Complaint in this case was filed, only one of these matters, "Bayridge Expansion," was still open. (Affidavit of Alejandro Rodriguez, ¶ 11)

### III. Facts Pertaining To Ponte Gadea's Acquisition Of 730 N. Michigan

The facts pertaining to Ponte Gadea's acquisition of 730 N. Michigan, including the specific individuals involved in the transactions for Plaintiffs, are set forth in the accompanying Affidavit of Israel L. Alfonso, sworn on July 31, 2008.

**IV.    Plaintiff's Lawsuit and Ponte Gadea's Motion to Dismiss**

On March 17, 2008, Plaintiffs filed a Complaint alleging breach of contract and tortious interference with prospective economic advantage. Plaintiffs claimed that Ponte Gadea breached the confidentiality agreement by purchasing the Property and interfered with their prospective deal to purchase and sell the Property themselves.

In response, Ponte Gadea filed a Motion to Dismiss these claims, arguing that the confidentiality agreement was void and unenforceable and the tortious interference claim was duplicative. In addition, Ponte Gadea asserted that the tortious interference claim should be dismissed on the grounds that (i) Defendants were not strangers to the business relations between Plaintiffs and the owner and (ii) Plaintiffs failed to allege both a reasonable expectancy of entering into a future business relationship and an intentional and unjustified interference by Defendants that induced a loss of the purported business expectancy.

In light of the Motion to Dismiss, on May 13, 2007, Plaintiffs' counsel requested that GT withdraw the Motion to Dismiss and allow Plaintiff to file an amended complaint. On May 23, 2008, the Court entered an Agreed Order ordering the Motion to Dismiss withdrawn, allowing Plaintiffs until June 20, 2008 to file an Amended Complaint and providing Defendants with 30 days thereafter to respond. On June 13, 2008, Plaintiffs filed their Motion to Disqualify. On June 19, 2008, Plaintiffs filed their Amended Complaint, adding a count for unjust enrichment. On July 21, 2008 Defendants filed a Motion to Dismiss the Amended Complaint.

## **ARGUMENT**

**I.    Standard for Disqualification**

As an initial matter, "disqualification is a 'drastic measure that courts should impose only when absolutely necessary." *Bogosian v. Board of Education of Community Unit School District*

*200*, 95 F. Supp. 2d 874, 875 (N.D. Ill. 2000) (quoting *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993)). The burden is on the moving party to demonstrate the facts warranting disqualification. *Id*. Besides "creating unnecessary delay, disqualification often deprives a party his chosen legal advisor." *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997) (citing *Robin v. Katten, Muchin, Zavis, Pearl & Galler*, No. 85 C 8913, 1986 WL 7079, at *6 (N.D. Ill. Mar. 30, 1994)). Since "the Seventh Circuit considers the right of a party to select counsel of its choice to be a matter of significant importance, [it] will not be disturbed unless a specifically identifiable impropriety has occurred." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1566-067 (Fed.Cir. 1984). Furthermore, courts are reluctant to disqualify a party's counsel because "the wishes of a fully informed client deserve great deference" and motions to disqualify "can be misused as techniques of harassment." *Times Herald Printing Co. v. Dallas Morning News Co.*, 1987 WL 20411, *2 (N.D. Ill. Nov. 25, 1987) and *Bogosian*, 95 F. Supp. 2d at 875, quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721-22 (7th Cir. 1982). Indeed, courts worry about the "encouragement of vexatious tactics and increased cynicism by the public." *Panduit*, 744 F.2d at 1577. Plaintiffs' Motion to Disqualify perfectly exemplifies the harassing tactics the courts seek to avoid. Such harassment and calculated gamesmanship should not be rewarded.

**II.     Greenberg Traurig LLP Should Not Be Barred From Representing Defendants In This Matter Because Plaintiffs Are Not Current Clients Of The Firm**

With principles of basic fairness in mind, courts look to many factors when finding the existence of an attorney client relationship. 32 Am. Jur. 2d Federal Courts § 7 (2008). An attorney client relationship exists "when it is shown that the alleged client consulted with the lawyer in question, that he did so with the intent to seek legal advice or assistance, that he made

a request for such advice or assistance, and that he received from the lawyer either the advice or assistance requested or a promise that such would be provided." *Id*.

Relying heavily on hyperbole, Plaintiffs do not even bother to prove up the elements of an attorney client relationship in connection with the W South Beach or the Miami Herald projects. Instead, they argue that a current attorney client relationship exists because invoices were sent to Mr. Perry's attention at RFR Holding. This fact alone, however, is not dispositive of the existence of an attorney-client relationship. Here, as shown by GT's client intake system, GT's clients for this project are David Edelstein and 2201 Collins Fee LLC. And while invoices may have been sent to Mr. Perry at RFR Holding, they were paid by 2201 Collins Fee, regardless of which entity received them.

In addition, while Plaintiffs have argued that RFR Holding LLC has used Jerrold Goldberg for labor matters, it is undisputed that Mr. Goldberg's work performed at Frank Mangieri's ("Mangieri") direction ended on February 15, 2008 -- over a month before Plaintiffs filed their Complaint. Because "a 'current client' is any client whose representation existed at the time the complaint was filed," *Deleo v. Swirsky*, No. 00 C 6917, 2003 WL 291914, *3 (N.D. Ill. Feb. 10, 2003), Mr. Goldberg's work does not make RFR Holding a current client for the purposes of this motion.

Accordingly, Plaintiffs' reliance on Rule 1.7 of the Illinois Rules of Professional Conduct, Local Rule 83.51.7 of the Local Rules of the United States District Court for the Northern District of Illinois, and 22 NYCRR § 1200.24, is misplaced. These rules all apply to conflicts between current representations and have no bearing here. Potential conflicts with former clients are instead governed by Rule 1.9 of the Illinois Rules of Professional Conduct and Local Rule 83.51.9 of the Local Rules of the United States District Court of the Northern District

of Illinois. Under these rules, an attorney cannot represent a client adverse to the interests of a former client in a matter that is "substantially related" to the present matter. Plaintiffs do not even suggest that GT has represented Plaintiffs or their affiliates in matters "substantially related" to the present case on their behalf. Thus, disqualification of GT under Rules 1.9 and 83.51.9 is not warranted here.

Plaintiffs misunderstand the significance of RFR Holding's silence during GT's adverse representation of Ponte Gadea during the initial, failed negotiations to purchase the Property. GT does not believe that Plaintiffs waived a conflict of interest by permitting GT to represent Ponte Gadea in the underlying deal. Rather, Plaintiffs never objected to GT's representation of Ponte Gadea during the negotiations because they fully recognized that there was no conflict to waive. Only now, in the face of litigation, have Plaintiffs decided to exaggerate the facts and fabricate a conflict of interest. Plaintiffs resort to these tactics so they can continue to be represented by their deal counsel, while preventing their opponent from benefitting from the same continuity.

Finally, the fact that a GT attorney, when determining whether Century 21 Chicago was affiliated with Century 21 Department Stores after the Complaint was filed, asked Plaintiffs to waive any potential conflict that might arise is not an acknowledgment that an actual conflict exists. Rather, by reaching out, GT sought to avoid any unnecessary disputes and facilitate the smoothest possible representation for all involved. Still, no actual conflict exists here. GT has not gained any knowledge through its representation of Plaintiffs' affiliates that would harm Plaintiffs through GT's continued involvement in this action. While no party will be harmed by GT's continued representation, Defendants will be injured by GT's disqualification. Plaintiffs should not be permitted to use this disqualification motion as a litigation tactic, when it is

patently clear that no real conflict of interest exists and no party will be disadvantaged by allowing Defendants to hire their counsel of choice.

### III. Greenberg Traurig's Current Representations of Plaintiffs' Affiliates Do Not Warrant Disqualification

Plaintiffs also argue that GT's current representation of Plaintiffs' affiliates necessitates GT's disqualification. Nevertheless, even if GT does currently represent affiliates of Plaintiffs, doing so does not prohibit GT from being adverse to Plaintiffs here. As the Illinois State Bar Association Advisory Opinion 95-15 (May 17, 1996) makes clear:

> a corporate affiliation, including a majority or even sole ownership of a subsidiary, without more, does not make a client corporation's affiliate an additional client of the lawyer . . . [thus] a representation adverse to the affiliate will not be directly adverse to 'another client' within the meaning of Rule 1.7(a).

Accordingly, "the Rules of Professional Conduct generally permit a lawyer to accept a proposed representation adverse to a subsidiary or other affiliate of an existing corporate client." Illinois State Bar Association Advisory Opinion 95-15; *see also* Formal Opinion 2007-3 of the Committee on Professional and Judicial Ethics for the Association of the Bar of the City of New York, 2008, Vol. 63 No. 1; *see also* American Bar Association Formal Opinion No. 95-390 (January 25, 1995) ("A lawyer who represents a corporate client is not by that fact alone necessarily barred from a representation that is adverse to a corporate affiliate of that client in an unrelated matter").

While these opinions leave open the possibility that particular circumstances *may* require an attorney to consider affiliates of their corporate clients to be clients as well, doing so is discretionary based on all of the factors involved. Illinois State Bar Association Advisory Opinion 95-15 and American Bar Association in its Formal Opinion No. 95-390. In this case, GT's representations of Plaintiffs' affiliates are completely unrelated to the issues involved in

this lawsuit. Any GT representations of Plaintiffs' affiliates in the W South Beach and Miami Herald matters involve separate and discreet real estate projects, funded by different investors, managed by different groups of real estate developers, in Miami and Miami Beach, Florida. Likewise, GT's representations of Plaintiffs' affiliates RFR Realty LLC and Century 21 Department Stores LLC involve unrelated labor and zoning matters, arising out of separate real estate projects in New York City.

Under these facts, the Court should not treat the affiliates and the Plaintiffs as a single GT client. First, GT's clients and RFR Holding and/or Century 21 Chicago do "not share a complete identity of management and directors . . ." *Donnelley Corp. v. Sprint Publishing & Advertising, Inc.*, No. 95 C 5825, 1996 WL 99902, *3 (N.D. Ill. Feb. 29, 1996). As the allegations of the Complaint and Amended Complaint make clear, the 730 North Michigan project was a separate, discreet real estate project with its own investors and its own unique corporate structure of single purpose entities formed to either hold the real estate or to manage the LLC holding the real estate. While there is some overlap, it cannot be said that either the W South Beach Project, the Miami Herald Project, or either RFR Realty or Century 21 Department Stores share a complete identity of management and directors with the entities involved in the 730 North Michigan project. Accordingly, Plaintiffs' reliance on *Board of Managers of Eleventh Street Loftominium Assoc. v. Wabash Loftominium*, LLC, 376 Ill.App.3d 185 (1st Dist. 2007) is misplaced. Without a complete identity of management groups, Ponte Gadea should not be prevented from using its counsel of choice.

Furthermore, Plaintiffs' arguments that the same people involved in the present litigation are those people with whom GT communicates while representing Plaintiffs' affiliates overreaches. First, the people hiring and communicating with GT are not the same people

13

primarily involved in this case.  For example, Mangieri was not the individual responsible for providing GT with business or managing the matters for RFR Realty LLC.  Furthermore, any RFR Realty LLC matter in which he was involved concluded before the filing of the Complaint in this action.  Mangieri's infrequent communications with GT do not make RFR Realty LLC and RFR Holding, two separate legal entities, a single client when it does "not appear that the same lawyers in the corporate parent's office are *actively managing*" the present matter and the unrelated other matters.  *The Reuben H. Donnelley Corp.*, 1996 WL 99902, at *3 (emphasis added).  Indeed, "[w]hen different faces represent the corporations in each litigation, the firm is less likely to feel any divided loyalty that could affect its representation."  *Id*.  Not only are different in-house counsel managing the different matters on behalf of Plaintiffs' affiliates than are managing this case on Plaintiffs' behalf, but different GT attorneys are involved in this action and in the matters where GT represents Plaintiffs' affiliates.

Moreover, Plaintiffs hired outside counsel to represent them in both the underlying transaction and litigation for the current matter.  All of the negotiations regarding 730 North Michigan involved Katsky Korins LLP on Plaintiffs' behalf.  While one GT attorney that has never represented Plaintiffs had a single conversation with Michael Fuchs, neither he nor any other GT attorneys dealt with Ezra Sultan or Mangieri during the negotiations.  In fact, no GT attorney ever had any conversation with a representative of Century 21 Chicago.  In addition, since Plaintiffs' breach of contract claim hinges on legal interpretation and their tortious interference with prospective economic advantage depends on <u>Defendants</u>' conduct, the current matter will not require GT to oppose the same representatives of the affiliate with whom it regularly communicates while representing its client.  Based on the facts and legal issues, the likelihood that Mangieri or Mr. Sultan will be witnesses in this case is remote, at best.  Thus, the

passage cited by Plaintiffs from Formal Opinion 2007-3 of the Committee on Professional and Judicial Ethics for the Association of the Bar of the City of New York, 2008, Vol. 63 No. 1 is inapposite.

Finally, *Travelers Indemnity Company v. Gerling Global Reinsurance Corp.*, No. 99 Civ. 4413, 1996 WL 99902 (S.D.N.Y. Aug. 14, 2000) is also distinguishable. In that case, the court found that the affiliate was also a firm client because the companies were engaged in similar businesses while sharing the same officers, office space, payroll department, human resources department, computer networks, travel agents, mail services, credit card issuers, and annual employee gatherings. Plaintiffs do not suggest that GT's current clients and Plaintiffs share all or even a majority of these factors. Furthermore, GT's represents Century 21 Department Stores LLC in one open matter that involves entirely different projects, cities, combinations of investors and developers, people interacting with GT on behalf of Century 21 Department Stores LLC, and attorneys within GT than does this action. Thus, the Court should not treat Plaintiffs and any of Plaintiffs' affiliates represented by GT as a single client.

## **CONCLUSION**

For the reasons stated above, Plaintiffs' Motion to Disqualify should be denied and Greenberg Traurig should be permitted to represent Defendants Ponte Gadea Florida, Inc. and Chicago Michigan, LLC.

Dated: August 1, 2008　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　PONTE GADEA FLORIDA, INC. and
　　　　　　　　　　　　　　　　　　　　CHICAGO MICHIGAN, LLC


　　　　　　　　　　　　　　　　　　By:　　s/ Thomas E. Dutton
　　　　　　　　　　　　　　　　　　　　　One of Its Attorneys

Rita M. Alliss Powers, Esq.  (ID# 6203623)
Howard K. Jeruchimowitz, Esq.  (ID# 6243182)
Thomas E. Dutton, Esq.  (ID# 6195923)
GREENBERG TRAURIG, LLP
77 West Wacker Drive
Suite 2500
Chicago, IL  60601
Telephone:  (312) 456-8400
Facsimile:  (312) 456-8435

# EXHIBIT A

# EXHIBIT "B-1"
# Corporate Structure of 2201 Collins Fee LLC



**NOTES**
*No individual owns more than 5% of the interests in BeachInvest, LLC and the remaining interests are held indirectly by Investcorp, SA, which is a publicly traded company.